483 P.2d 928

**KWIK VEND INC., Boise, Idaho, Plaintiff-Appellant,**

v.

**Clyde KOONTZ, Tax Collector for the State of Idaho, Defendant-Respondent.**

**No. 10427.**

Supreme Court of Idaho.

April 8, 1971.

M. Allyn Dingel, Jr., of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiff-appellant.

Robert M. Robson, Atty. Gen., Thomas C. Frost, Sp. Asst. Atty. Gen., Boise, for defendant-respondent.

McFADDEN, Justice.

This appeal is from the judgment of the district court which affirmed an assessment pursuant to I.C. § 63–3621 by the tax collector of a 3% use tax deficiency against appellant Kwik Vend, Inc. This assessment was made on certain coin operated cold drink machines, coffee machines and four micro-wave ovens purchased by the company between July, 1965, and February, 1967. The appellant is an Idaho corporation engaged in the business of selling foodstuffs and beverages at retail through coin operated automatic dispensing devices known as vending machines situated in various locations. Clyde Koontz, the respondent herein, is the tax collector for the State of Idaho.

The cold drink machines are used to dispense and sell various kinds of soft beverages where cold water is carbonated, mixed with flavored syrup and piped into

cups with crushed ice. Water and electricity are supplied to the machine by ordinary plumbing and electrical outlets. To operate the machine a purchaser first selects the type of soft drink he desires and then places a coin in the machine which starts the cycle to make the drink. These machines are equipped with automatic change-making equipment. Upon deposit of the coin, an electronic control is activated and a paper cup is placed in the receptacle, and automatically, flavored syrup is forced into a measured amount of water carbonated by carbon dioxide gas, which then flows into a waiting cup along with crushed ice, if desired.

The automatic coffee machines are of two types, i. e. "tape" or "loose ground." Again the machine is activated by the customer depositing a coin. In both types of machines, hot water under pressure is forced through a premeasured amount of ground coffee. In the tape machine the coffee is contained in a tape where the coffee is held in place by filters in the tape. In the loose ground machine, a pre-determined amount of coffee is measured from a bin and placed in position for the hot water to pass through. The hot water extracts the "nectar" from the coffee and continues on into a paper cup for the customer. The entire operation takes only from six to nine seconds. These machines also dispense tea, hot chocolate and hot soup, all prepared by the use of "instant" powders.

The micro-wave ovens are not coin operated, but are placed near other types of dispensing units of the appellant so that patrons, if they desire, can heat hot dogs, hamburgers, chili beans or other foods which are sold through separate coin operated dispensing machines. These ovens operate from electromagnetic waves at high frequencies. The micro-waves are developed in a magnatron tube in the oven, and the waves heat the food by activating the molecules in the food, dependent on the amount of moisture in them. The paper and plates used in packaging the foodstuffs do not absorb the micro-waves to the extent of the foodstuffs and therefore remain relatively cool. The heating time is controlled by a timer on the device.

Appellant at all times material to the issues involved was the holder of a seller's permit issued by the tax collector, authorizing appellant to sell tangible personal property at retail in Idaho and authorizing the appellant to execute "resale certificates" under I.C. §§ 63–3620 and 63–3621, as to the ingredients which it purchases in preparing its food and beverages for sale through its various vending machines.

Although appellant has assigned error to certain findings of fact and conclusions of law of the trial court, the facts are without dispute, and the real issue before this court is not whether the facts were correctly found, but whether the statutes in question were correctly applied. In particular, appellant contends that its purchase of the dispensing machines and micro-wave ovens were exempt from the use tax under the provisions of I.C. § 63–3622(d) as it existed prior to its amendment by S.L.1967, Ch. 290, § 7.[1]

1. I.C. § 63–3622 sets forth a series of exemptions from the taxes imposed by "The Idaho Sales Tax Act" of 1965. The specific exemption claimed by appellant here is set forth in paragraph (d) of the act, which provides:

"There are exempted from the taxes imposed by this act the following:
(a) * * *
* * * * *
(d) Receipts from the sale, storage, use or other consumption in this state of tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, mined, produced or fabricated for ultimate sale at retail within or without this state, and tangible personal property primarily and directly used or consumed in or during such manufacturing, processing, mining, farming, or fabricating operation by a business or segment of a business which is primarily devoted to such operation or operations, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of

**168**

It is the contention of appellant that all of these devices are used in processing of products and that each of them "is necessary or essential to the performance of such operation," and thus are exempt from this tax. It further asserts that all of this equipment is "used for the purpose of producing * * * a physical change * * * or otherwise placing a product in a more marketable condition * * *." Appellant points out that the cold drink dispensing machines and also the coffee dispensers are used in converting the raw products (water, carbon dioxide gas and syrups in the cold drink dispensers, and coffee, water and "instant" powders for chocolate, tea, hot soups, etc.) into a saleable product. Appellant uses the same argument insofar as the micro-wave ovens are concerned, that these ovens are a part of the process of converting what would be normally unconsumable items (cold foods) into cooked or heated items suitable for consumption by the purchaser.

Respondent tax collector, however, takes the position that these particular dispensing machines and the ovens are primarily retailing devices and are not primarily processing devices used in manufacturing or processing operations so as to qualify under the exemption statute in question. Respondent asserts that equipment used in selling or distributing activities is excluded from the exemption. This contention is based on the phraseology of the exemption statute, and is founded on the theory that appellant is primarily engaged in a retail business as the term retail is defined in the sales tax act. I.C. §§ 63-3610 and 63-3611. It is the respondent's contention that the exemption afforded by I.C. § 63-3622(d) is applicable only to property "*primarily* and *directly* used or consumed in or during such manufacturing, processing, mining, farming, or fabricating operation," (emphasis added), and unless a taxpayer is actually engaged in a "manufacturing, processing, mining or farming or fabricating operation" the exemption is not applicable. Thus, respondent reasons, since appellant is in fact a retailer, it cannot qualify under provisions of the statute for the exemption afforded manufacturers, processors, miners, farmers and fabricators.

The parties to this appeal have cited cases from other jurisdictions to support their respective positions. However, because of the difference in the phraseology of the statutes involved in those cases from other jurisdictions, it is difficult in many instances to apply the reasoning of those cases to the case at bar. However, this court has repeated on numerous occasions that exemption statutes are strictly construed against the taxpayer. Big Wood Canal Co. v. Unemployment Compensation Division of the Industrial Accident Board, 61 Idaho 247, 100 P.2d 49 (1940); Sunset Memorial Gardens v. State Tax Commis-

such operation. Chemicals, catalysts, and other materials which are used for the purpose of producing or inducing a chemical or physical change or for removing impurities or otherwise placing a product in a more marketable condition are included within this exemption, as are other articles of tangible personal property used in the actual manufacturing, processing, mining, farming or fabricating operations. This exemption does not include machinery, equipment, materials and supplies used in a manner that is incidental to the manufacturing, processing, mining, farming or fabricating operation such as maintenance and janitorial equipment and supplies, and hand tools with a unit purchase price not in excess of $100.00; nor does it include tangible personal property used in any activities other than the actual manufacturing, processing, mining, farming or fabricating operation such as office equipment and supplies, equipment and supplies used in selling or distributing activities, in research, or in transportation activities; nor shall this exemption include motor vehicles required to be licensed by the laws of this state, without regard to the use to which such motor vehicles are put; nor shall this exemption include tangible personal property used or consumed in processing, producing or fabricating tangible personal property exempted from this act by subsections (f), (g), (j), and (n) of this section."

sion, 80 Idaho 206, 327 P.2d 766 (1958); Upper Columbia Mission Society v. Kootenai County, 93 Idaho 880, 477 P.2d 503 (1970).

■■ Examination of the pertinent portions of I.C. § 63–3622(d) reflects that the exemptions provided therein were designed to apply to those businesses that were principally engaged in a "manufacturing, processing, mining, farming, or fabricating operation." Businesses of that nature basically do not deal with the ultimate consumer as does the appellant here. This view is supported by the provisions of that section which deny the exemption to those engaged in the manufacturing, processing, mining, farming or fabricating activities for "equipment and supplies used in selling or distributing activities * * *." It is recognized that appellant's machines are used in a type of "processing" of raw materials, but this use is related to the selling activities of the appellant, and thus do not explicitly come within the scope of this exemption statute.

It is thus the conclusion of this court that the trial court did not err in its findings of fact and conclusions of law.

The judgment of the trial court is affirmed. Costs to respondent.

McQUADE, C. J., DONALDSON and SPEAR, JJ., and SCOGGIN, District Judge, concur.