COLONIAL CAFETERIA–ARLINGTON, INC., Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, Appellee.

No. 8296.

Court of Civil Appeals of Texas, Beaumont.

Sept. 6, 1979.

Myra A. McDaniel, Asst. Atty. Gen., Austin, for appellant.

Donald H. Ray, Henry O. Getchell, Fort Worth, for appellee.

DIES, Chief Justice.

Colonial Cafeteria, plaintiff below, sought a declaratory judgment, pursuant to *Tex.Rev.Civ.Stat.Ann. art. 6252–13a Sec. 12* (Vernon Supp. 1978), that the electricity consumed in its operation is exempt from sales tax under the tax exemption found in *Tex. Tax.-Gen. Ann. art. 20.04, Sec. (R)*

(Vernon 1969).[1] Colonial complained about the comptroller's interpretation of Comptroller Ruling No. .015[2] denying the *art. 20.04, Sec. (R)* exemption to Colonial.

Trial was without a jury, and the court entered judgment for the Comptroller of Public Affairs, appellee here. Appellant complains that the trial court erred in failing to hold that *Sec. (R)* of *art. 20.04* was available to Colonial because the evidence is undisputed that Colonial is engaged solely in processing covered by the exemption, that denial of this exemption results in denial of equal protection to appellant, and that the trial court erred in holding that the processing of food is not a manufacturing process.

It is not clear from appellant's choice of words that point one is evidentiary. Appellant addresses the predominant use theory and urges that it is applicable only where there is a qualifying and non-qualifying commercial use and there is no unqualifying use here. In the argument under this point, appellant also says:

> "It would be unreasonable to interpret the statute so as to deny the clear exemption to a person obviously engaged in processing tangible personal property for sale as tangible personal property merely because of the existence of the selling function. . . . [T]here is no justification for exempting . . . only gas and electricity consumed directly in causing a chemical or physical change in the food product."

■ If point one is evidentiary, the record below contains probative evidence showing that appellant is not primarily a food processer. Only one-third of appellant's facility is devoted to kitchen facilities. All of the electricity is metered through one meter, and all of the gas is metered through one meter. Appellant's own witness, a consulting engineer, testified that less than fifty percent of the electricity consumed at Colonial was used directly for processing food.

In construing a statute, we have been told to look at the intention of the legislature, the old law, the evil sought to be corrected, and the remedy. *Calvert v. Kadane*, 427 S.W.2d 605 (Tex.1968). The burden is upon the person who makes the sale of tangible personal property to show that this sale is not a retail sale. *Tex. Tax.-Gen. Ann. art. 20.021(F)* (Vernon Supp. 1978). Here Colonial did not meet this burden.

*Tex. Tax.-Gen. Ann. art. 20.04(L)(2)* (Vernon 1969) notes that exempted "food products" shall not include:

> "(c) Foods and drinks . . . served, prepared or sold ready for immediate consumption in or by restaurants, drug stores, lunch counters, cafeterias, hotels or like places of business . . . ."

■ Thus, the statute itself makes it clear that appellant's business is not covered by the exemption found in *20.04(R)*. We are told that departmental practice is important only where the statute is ambiguous, *Brown Express, Inc. v. Railroad Commission*, 415 S.W.2d 394 (Tex.1967); but even if the statute is ambiguous, the administrative interpretation here does not support appellant's position. The ruling (set out in note 2, supra) establishes that only the processing of food and kindred products

1. "Commercial use" means use by persons engaged in selling, warehousing or distributing a commodity or service, either professional or personal.

    The term "commercial use" specifically does not include use by persons engaged in: (1) processing tangible personal property for sale as tangible personal property. . . . [As amended *Sec. (R)(3)* contains this same exemption (Vernon Supp. 1978)].

2. This ruling includes as processing of tangible personal property, the manufacturing of (2)(a)(1) "food and kindred products." It also

sets out in subdivision (4) the "predominant use" theory, as follows:

> "The sale of gas or electricity to persons engaged in a business using gas or electricity for 'commercial use' and who are also engaged in another business using gas or electricity for an excluded 'commercial use' as set out above shall be totally exempt or non-exempt based upon the predominent use of such gas or electricity for either 'commercial use' or excluded 'commercial use.' The 'predominant use' theory shall only be applied to such persons where there is a single meter reading. . . . "

for sale as personal property is exempt from the tax. Here plaintiff's business is the preparing of food for immediate consumption.

While there are no Texas cases defining processing within the confines of this statute, several other states have considered this question.

In denying the tax exemption to a coin operated machine selling drinks and sandwiches, the Idaho Supreme Court said:

". . . the exemptions provided therein were designed to apply to those businesses that were principally engaged in a 'manufacturing, processing, mining, farming, or fabricating operation.' *Businesses of that nature do not deal with the ultimate consumer* as does appellant here."

*Kwik Vend, Inc. v. Koontz*, 94 Idaho 166, 483 P.2d 928 (1971). See also *McDonald's Corp. v. Oklahoma Tax Commission*, 563 P.2d 635 (Okl.1977) holding that the preparation of food for immediate retail sale is not manufacturing.

Appellant also complains that the denial of exemption to him through interpretation of Ruling 0.15 results in denial to appellant of equal protection of the laws.

The thrust of appellant's argument here is that a number of area competitors are fast food operations who are exempt through the predominant use theory. Under both the Idaho and Oklahoma decisions cited above, these places would not be exempted. The predominant use theory, therefore, does raise an equal protection question.

Appellant argues that the instant case is similar to *San Antonio Retail Grocers, Inc. v. Lafferty*, 156 Tex. 574, 297 S.W.2d 813 (1957), where the Texas Supreme Court found no reasonable basis to apply the provisions of the Act in question (sales limitation) to grocery stores only and not other stores that might sell the same merchandise.

■ Here, however, appellee is not attempting to deny the exemption to all restaurants other than fast food chains. The predominant use theory goes into play only when there is no practical way to separate exempted and non-exempted usage. Inequalities resulting from business conditions and activities and not controlled by law do not fall within the arbitrary discrimination prohibition. *Sanchez Morales & Co. v. Gallardo*, 18 F.2d 550 (1st Cir. 1927).

■ The U.S. Supreme Court has noted:

"*Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation . . . .*"

*Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245, 1255 (1936). Appellant could have a separate meter for exempt uses and would not then be subject to the predominant use theory. It is not practical to separate these uses otherwise.

"The Comptroller is not required to grant the taxpayer relief simply because alternative formulae, which produce a lesser tax, are proposed."

*Texaco, Inc. v. Calvert*, 526 S.W.2d 630, 634 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

The *Texaco* court further noted that appellant had established the corporate structure knowing only the dividends and interest from subsidiaries could be used in the allocation formula. *Id.*

The predominant use theory has been approved by the Austin court who noted that it is consistent with the general objectives of the act, is workable, and is used only when there is no other practical way to determine the taxable amount of gas or electricity consumed. *Houston Natural Gas Corp. v. Southwestern Apparel, Inc.*, 558 S.W.2d 950 (Tex.Civ.App.—Austin 1977, writ dism'd).

■ Finally appellant urges that the trial court erred in holding that the processing of food is not a manufacturing process and that appellant does not perform "processing" operations.

Appellant complains that appellee raised this defense too late. It would appear that the question of whether food preparation was within the statutory definition of processing was to some extent tried by consent.

However, even if this were not true, appellant's third point is without merit as the issue is whether *all* food preparation constitutes processing not whether appellant performs any processing. Appellant could have separate meters to determine electrical consumption on the portion of work recognized as exempt.

Accordingly, all of appellant's points of error are overruled, and the judgment of the trial court is affirmed.

AFFIRMED.