715 P.2d 1283

**C.K. HARKNESS, Plaintiff-Appellant,**

v.

**The CITY OF BURLEY, a municipal corporation; and W. Leman Messley, Defendants-Respondents.**

No. 15793.

Supreme Court of Idaho.

Feb. 28, 1986.

W. Craig James of Skinner, Fawcett & Mauk, Boise, for plaintiff-appellant.

William Parsons of Parsons, Smith, Stone & Fletcher, Burley, for defendants-respondents.

BISTLINE, Justice.

## I.

Plaintiff-appellant Harkness began employment with the City of Burley Police Department as a part-time dispatcher in November, 1967, while attending the College of Southern Idaho. In this initial position Harkness was a probationary employee. Subsequently Harkness worked for the Department as a parking meter officer, a patrolman, a detective, and finally a division commander. He was regularly and continuously employed with the Department from November 27, 1967 to October 2, 1981. On the latter date, Chief of Police Messley terminated Harkness' employment.

Chief Messley gave two reasons for Harkness' termination: a lack of arrests and citations, and his leaving his post on one occasion without authority or permission to do so. At trial Harkness offered evidence that his arrest and citation record were on par with others of his rank in 1981, and that his leaving his duty station was to deal with an emergency and thus within an exception to the proscription against leaving the duty station.

The parties dispute Harkness' status during his 14-year tenure. The defendants point out that he had no definite, fixed period of time to work. Harkness points out that the city council discovered his initial status as a probationary employee in 1970, at which time it passed a resolution making him a permanent employee. The Department issued a copy of the Burley Police Department Rules and Procedures Manual to Harkness in 1979, which established the permissible grounds and procedures for Harkness' dismissal.

On April 26, 1982 Harkness gave notice of his intention to file suit, and on May 13, 1983, he filed a six-count suit against the defendants. Count one alleged that Burley breached its contract of employment with Harkness. Count two alleged violation of equal protection and due process under the state and federal constitutions, the latter enforceable by virtue of 42 U.S.C. § 1983. This count constitutes the allegation of a deprivation of Harkness' property interest in his employment. Count three alleged a breach of the employer's duty of good faith and fair dealing toward employees. Count four alleged the intentional infliction of emotional distress on the part of Messley. Count five alleged defamation on the part

of Messley. Count six involved a demand for costs and attorney's fees.

Upon the defendant's motion prior to trial, the district court dismissed count one (regarding breach of contract) and count three (regarding breach of the duty of good faith and fair dealings) for failure to provide timely notice as required by either I.C. § 6–906 or § 50–219. For the same reason, the district court dismissed counts four (regarding intentional infliction of emotional distress) and five (regarding defamation) as they pertained to the city and/or its employees acting within the scope of their employment, but not as they pertained to Messley, whom Harkness alleged had acted individually and outside the scope of his employment.

At trial, in response to the defendants' objections, the district court refused to admit into evidence a copy of the city council resolution making Harkness a permanent employee, and a copy of the Burley Police Department Rules and Procedures Manual. Harkness moved to certify the question of the admissibility of these exhibits as a controlling question of law to this Court. That motion was denied.

In the wake of these rulings, Harkness voluntarily dismissed counts four (regarding intentional infliction of emotional distress) and five (regarding defamation), leaving counts two (regarding due process and equal protection) and six (regarding attorney's fees). Harkness then presented limited evidence on damages and rested. At that point the defendants moved for entry of a directed verdict, which the district court granted.

## II.

Harkness appeals from the directed verdict, arguing that the district court erred in (1) refusing to admit into evidence the resolution and the manual, and subsequently granting the motion for a directed verdict, and (2) dismissing several of his counts against the city and its employee because of his failure to provide timely notice. Harkness also appeals the granting of attorney's fees to the defendants following trial. As discussed below, we reverse the district court's refusal to admit the offered exhibits and consequently reverse the directed verdict as well. Perforce we reverse the granting of attorney's fees. However, we affirm the dismissals for failure to provide timely notice.

### A. *The Rejected Exhibits and the Directed Verdict*

■ Harkness alleged that the defendants violated his constitutional right against the taking of his property interest in his governmental job without due process. Such a constitutional right is enforceable against persons acting under color of state law under 42 U.S.C. § 1983. To establish his property interest, Harkness offered exhibit 16—the police manual, and exhibit 22—the city council resolution making Harkness a permanent employee. In refusing to receive these into evidence, the district court ruled them irrelevant because they failed to establish a fixed term of employment. R., Vol. 1, pp. 97, 109–110. Apparently, the district court believed the only evidence relevant to a property interest in public employment is that which establishes a fixed term. *Id.* Without these exhibits, Harkness was unable to resist the defendants' motion for a directed verdict. Our analysis, set out below, leads us to hold that the exhibits were relevant to properly determining whether Harkness had a contract limiting the permissible reasons for discharge, and should have been admitted. We further conclude that since these exhibits amount to substantial evidence of a contract of employment in which Harkness had a property interest, the motion for directed verdict should have been refused.

1. *Relevancy of the Exhibits to Harkness' Property Interest.*

■ In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court established the parameters of a legitimate property interest in public employment subject to due process protections:

To have a property interest in a benefit, a person clearly must have more than

an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Id.* at 577, 92 S.Ct. at 2709.

If the public employee has a property interest in employment, then due process requires that he or she be afforded notice and a hearing before termination of employment. *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). In addition to procedural protections, the employer may not deprive the employee of the property interest "for an improper motive and by means that were pretextual, arbitrary and capricious, and, because unrelated to the proper reasons for layoff, without any rational basis. *Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1933) . . . [additional citations omitted]." *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332–33 (11th Cir.1983).

The Supreme Court later specified the potential sources for a property interest in employment with a state: "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (footnote omit-

ted). Accordingly, we now examine what constitutes a property interest in employment under Idaho law.

To have a property interest in employment in Idaho, the employee must have more than a mere hope of continued employment. *Loebeck v. Idaho State Board of Education*, 96 Idaho 459, 461, 530 P.2d 1149, 1151 (1975). Certainly a permanent employee, whose employment is not terminable at the will of either the employee or the employer, holds a property interest in his or her position. *Allen v. Lewis-Clark State College*, 105 Idaho 447, 460 n. 6, 670 P.2d 854, 867 n. 6 (1983) ("A term of employment set by contract is a property interest safeguarded by due process."); *Bowler v. Board of Trustees*, 101 Idaho 537, 541, 617 P.2d 841, 845 (1980) (Teacher's interest in renewable contract rights to continued employment was a property interest.); *Ferguson v. Board of Trustees*, 98 Idaho 359, 364, 564 P.2d 971, 976 (1977), *cert. denied*, 434 U.S. 939, 98 S.Ct. 431, 54 L.Ed.2d 229 (Teacher's right to automatic annual renewal of contract and right not to be discharged except for cause gave property interest in employment.).

As Chief Justice Donaldson wrote for a unanimous Court, an employee "hired pursuant to a contract which specifies the duration of the employment, *or* limits the reasons for which the employee may be discharged" is not an employee "at will." [1] *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985) (emphasis added). The contract can be express or implied. *Clements v. Jungert*, 90 Idaho 143, 153, 408 P.2d 810, 815 (1965); *see Bishop, supra*, 426 U.S. at 344, 96 S.Ct. at 2077. An employee's handbook can constitute an element of the contract. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 368, 679 P.2d 640, 645 (1984) (The trier of fact must determine whether "a contract existed between the parties by virtue of the 1962 policy manual. . . ."); *Jackson v. Minidoka Irrigation District*, 98 Idaho 330,

---

**1.** An exception to the rule that an employee "at will" may be discharged at any time is "when the motivation for discharge contravenes public

policy." *MacNeil, supra*, 108 Idaho at 589, 701 P.2d at 209.

334, 563 P.2d 54, 58 (1977) (This Court enforces the right to a pre-termination hearing, since "a hearing is provided as a matter of contract (the handbook)."). Harkness alleged that the resolution and the manual together was a contract which limited the reasons for which he could be discharged.

Clearly, the district court was mistaken in its belief that the only employees with definite terms of employment were not "at will" employees. Chief Justice Donaldson made it abundantly plain that an employee who by contract could be discharged only for limited reasons, in addition to one with a term of employment, was not an "at will" employee. *MacNeil, supra,* 108 Idaho at 589, 701 P.2d at 209; *see also Hayward v. Henderson,* 623 F.2d 596, 597 (9th Cir.1980) *quoting Maloney v. Sheehan,* 453 F.Supp. 1131, 1141 (D.Conn.1978) ("A law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged. For example, if discharge can only be for 'just cause,' an employee has a right to continued employment until there is just cause to dismiss him. See, *Arnett v. Kennedy,* 416 U.S. 134, 151–52, 94 S.Ct. 1633, 1642–43, 40 L.Ed.2d 15 (1974)."). Consequently, evidence probative of such a contract, express or implied, would be relevant in an action for the deprivation of a property interest in public employment.

█ Harkness' offered exhibits were so probative. The employee manual issued to Harkness included the following:

802. GROUNDS FOR DISCIPLINARY ACTION. Any violation of rules of ethics, character, and conduct outlined in Chapter 5, or any act of insubordination, or any failure or inability of a member to maintain professional standards described in this manual, shall constitute *grounds for disciplinary action.*

803. INTERROGATION. For a member facing possible disciplinary action, interrogation shall be considered a fit and proper method of ascertaining the full facts of the issue for which the member may be disciplined. For the *purpose of this article, punitive or disciplinary action shall include dismissal,* demotion, suspension, reduction in rank or salary, written reprimand, or transfer for the purpose of remedial punitive relief from previous duty assignment. When any member is under investigation and subject to interrogation by his commanding officer, or any other member of the Department, which could lead to punitive action, such interrogation shall be conducted under the following conditions.

. . . .

803.03 FORMAL CHARGES. If it is determined through interrogation that there is probable cause to bring formal charges against the member being interrogated, *he shall be immediately so informed.* He shall immediately thereupon have the *right to choose a spokesman or legal counsel* who may represent him and/or be present at any further proceedings, investigations, and interrogative sessions. Said representative shall be of the defendant member's own choosing, except that said representative may not be an individual subject to the same investigation and/or charges.

. . . .

902. APPEAL, RIGHT TO. Every member of the Police Department shall have the right to appeal any disciplinary action (Chapter 8) and/or any denial of promotion, when such denial was made on any basis other than merit. This right shall not be abridged or threatened, and no punitive action shall be taken against a member seeking to appeal. (Emphasis added.)

Under a fair reading of these provisions, dismissal is a disciplinary action. The manual establishes certain grounds for disciplinary actions. Two of those grounds (not excerpted here) were the two given for Harkness' discharge—a lack of arrests and citations, and leaving the duty station without authority or permission to do so, except in the event of emergency. An employee facing disciplinary action has the right, among other rights, to notice, a hearing

(referred to as "interrogation"), to counsel at the hearing, and to appeal.

There can be little doubt that the manual containing these provisions was probative of the existence of a contract between Harkness and his employer which "limits the reasons for which the employee may be discharged. . . ." *MacNeil, supra,* 108 Idaho at 589, 701 P.2d at 209. At the very least, the careful delineation of grounds for dismissal implied that these were the *only* permissible grounds. This fact in turn was probative of Harkness' property interest in his employment. *Bishop, supra,* 426 U.S. at 344, 96 S.Ct. at 2077.

■ Likewise, the city council resolution making Harkness a permanent employee was probative of the existence of an employment contract in which Harkness had a property interest. The resolution provided:

WHEREAS, C.K. Harkness was hired by the Burley Police Department on a temporary basis November 28, 1967, and through oversight his name was not presented to the City Council since that time for permanent employment as a Burley Police Officer, although this has been the intent since that time.

NOW, THEREFORE, BE IT

'RESOLVED that C.K. Harkness be, and in all respects is hired as a police officer of the City of Burley on a *permanent* basis from November 28, 1967, and

BE IT FURTHER RESOLVED that the payment to C.K. Harkness of all sums due and owing to him as a regular police officer, be, and the same is, in all respects, approved, ratified and confirmed, retroactive to November 28, 1967.

BE IT FURTHER RESOLVED that C.K. Harkness is *entitled to all other employee benefits* in the same manner and to all intents and purposes as though no administrative oversight had occurred. (Emphasis added.)

By use of the term "permanent," the resolution strongly inferred that Harkness was no mere "at will" employee. And by granting Harkness all employee benefits, the resolution infers that he enjoyed the benefits of the manual's procedural protections in the event of disciplinary action. While by itself not conclusive of these facts, the resolution was most certainly relevant to them. *See Buckalew v. City of Grangeville,* 97 Idaho 168, 170, 540 P.2d 1347, 1349 (1975) (city ordinance granting a discharged police chief a term of employment provided evidence of contractual terms and property interest).

Idaho Rule of Evidence 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See also State v. Marlar,* 94 Idaho 803, 809, 498 P.2d 1276, 1282 (1972). Both proffered exhibits had some tendency to make more probable (or "were probative of") the existence of a contract limiting the reasons for discharge. Such a contract would make Harkness a permanent rather than an "at will" employee. Holding such status would afford Harkness the property interest he claimed. Thus, the exhibits related to a fact of consequence to (or "material to") the determination of the action. The district court erred as a matter of law in holding that a term of employment was the only fact of consequence to the employment contract and to Harkness' property interest. The resulting refusal to admit the exhibits was an abuse of discretion. *Marks v. Vehlow,* 105 Idaho 560, 569 n. 9, 671 P.2d 473, 482 n. 9 (1983).

2. *Appropriateness of the Directed Verdict.*

■ We now consider the directed verdict in light of the two improperly excluded exhibits. We have summarized the standard of review for motions for directed verdict in the following fashion:

One who moves for directed verdict pursuant to I.R.C.P. 50(a) thereby admits the truth of the adverse evidence and every inference that may legitimately be drawn therefrom in the light most favorable to the opposing party. . . . Such a motion should not be granted if there is substantial evidence to justify submitting the case to the jury. . . . "Substantial"

evidence is not, however, synonymous with uncontradicted evidence. It is enough that the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper. *Stephens v. Stearns*, 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984) (citations omitted).

The offered exhibits were substantial evidence of the existence of a contract limiting the reasons for which Harkness could be discharged. At a minimum this was a question of fact for the jury to decide. As Chief Justice Donaldson has explained:

When the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, *it is for the jury to decide* whether a contract in fact exists.... This Court has stated that "[g]enerally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts." *Johnson, supra*, 106 Idaho at 368, 679 P.2d at 645 (emphasis added) (citations omitted).

■ Harkness offered further evidence that the two reasons drawn from the manual as grounds for his discharge—a lack of arrests and leaving the duty post without authorization to do so—were pretextual. He offered as evidence his arrest record, which was comparable with those of his peers, and his explanation that an emergency caused him to leave his post during the one enumerated absence. The manual excepts departures caused by emergencies from the proscription against leaving the duty post. This evidence constitutes substantial evidence that Harkness' discharge was based on pretext. The deprivation of a property interest under pretextual grounds is a violation of due process. *Hearn, supra*, 688 F.2d at 1332–33.

In sum, Harkness offered evidence which should have been admitted of an employment contract limiting the reasons for which he could be discharged and affording him procedural rights upon a discharge proceeding. He offered additional evidence

that his discharge was grounded on pretexts. As a result, there existed legitimate jury questions on the existence of the contract, Harkness' property interest in the contract, and the violation of due process in the defendants' rescinding that property interest. The granting of the motion for directed verdict is reversed and the cause remanded.

### 3. *Attorney's Fees.*

Because we reverse the granting of the motion for directed verdict, we also reverse the granting of attorney's fees to the defendants pursuant to 42 U.S.C. § 1983 and I.R.C.P. 54.

### B. *The Dismissal of Counts One and Three*

■ Harkness appeals from the district court's dismissal of count one (regarding breach of contract) and three (regarding the duty of good faith and fair dealing). The district court dismissed these counts for failure to provide timely notice.

At the time of Harkness' discharge—the time when the claim for damages occurred —I.C. § 50–219 provided:

**Damage claims.**—All claims for damages against a city must be filed with the city clerk within sixty (60) days after the time when such claim for damages shall have occurred; specifying the time, place and probable cause of said damage. No action shall be maintained against the city for any claim for damages until the same has been presented to the city council, and until sixty (60) days shall have elapsed after such presentation. The payment of any and all damage claims by the city shall be by resolution, and not otherwise.

Harkness filed his notice some seven months after his claim occurred, not within sixty days as I.C. § 50–219 requires.

To avoid the sixty-day requirement, Harkness argues that I.C. § 5–217 controls rather than I.C. § 50–219. I.C. § 5–217 provides a four-year period within which a plaintiff must bring an action on an oral contract. Harkness suggests that this provision controls since it is a more specific statute of limitations than § 50–219.

The problem with this argument is that I.C. § 50–219 is not a statute of limitations. Its requirement of notice of claim is *additional to* the requirement of the applicable statute of limitations. *See Enterprise, Inc. v. Nampa City,* 96 Idaho 734, 738, 536 P.2d 729, 733 (1975); *Weaver v. Village of Bancroft,* 92 Idaho 189, 192, 439 P.2d 697, 700 (1968); *Cox v. City of Pocatello,* 77 Idaho 225, 233–34, 291 P.2d 282, 288 (1955). Because Harkness failed to provide notice of his claim within sixty days, his action was barred under I.C. § 50–219. The district court's dismissal of counts one and three is affirmed.

### III.  CONCLUSION

The district court's grantings of the motion for directed verdict and for attorney's fees are reversed and the cause remanded. The district court's dismissal of Harkness' counts one and three is affirmed.

Costs to appellant; no attorney's fees on appeal.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, J., concurs in the result.

SHEPARD, J., dissents without opinion.