782 P.2d 1238

Roger Keith BURCH,
Plaintiff-respondent,

v.

Lori Ann HEARN, Defendant-appellant.

No. 17782.

Supreme Court of Idaho.

Nov. 17, 1989.

Anderson, Pike & Bush, Idaho Falls, Idaho, for appellant. Edward W. Pike and Anne M. Bedinghaus O'Brien argued.

Cox & Ohman, Idaho Falls, Idaho, for respondent. Roger D. Cox argued.

BAKES, Chief Justice.

This is a paternity action brought by Roger Burch (Roger) against Lori Ann Hearn (Lori). The magistrate court dismissed the complaint without prejudice for lack of jurisdiction because Roger failed to file a claim of paternity pursuant to I.C. § 16–1513(3). Roger appealed to the district court, which reversed the lower court on the grounds that the notice requirement in I.C. § 16–1513(3) was not applicable to this action which was filed under I.C. § 7–1101. Lori appealed the district court's ruling to this Court. We affirm.

I

In January, 1985, Roger and Lori began dating while students at Arizona State University. The following summer they moved to Idaho Falls and lived with Lori's parents, at which time their son was conceived. They returned to Arizona to attend school, lived together, and on March 28, 1986, Lori gave birth to Brant Justin Burch in Mesa, Arizona. Roger is listed as father on the birth certificate.

In May, 1986, Lori graduated and returned home to Idaho Falls with Roger. Unable to find work, Roger returned to his home town in Indiana. Between August, 1986, and October, 1987, Roger visited Lori and their son several times in Idaho Falls and in Indiana and maintained various other forms of contact. In October, 1987, Lori told Roger that she was planning to marry a serviceman and that she and the baby were going with him to Germany.

Roger then filed a paternity action in magistrate court pursuant to I.C. § 7–1101 et seq., seeking an order of filiation and establishment of custodial rights and support obligations. The magistrate dismissed Roger's complaint for lack of jurisdiction since he had failed to file a claim of paternity with the Bureau of Vital Statistics as required by I.C. § 16–1513(3).

Roger appealed this ruling to the district court. Sitting in an appellate capacity, the district judge reversed the magistrate's ruling, holding that I.C. § 7–1101 and 16–1513(3), are "mutually exclusive" and the requirements of I.C. § 16–1513(3) do not apply to paternity actions brought pursuant to I.C. § 7–1101. Lori appeals the district court's ruling.

II

The sole issue on appeal is whether a putative father can bring a paternity action pursuant to I.C. § 7–1101 et seq. without

first filing a notice of claim to paternity under I.C. § 16–1513(3). I.C. § 16–1513(3) reads as follows:

**16–1513. Claim of paternity.**—...

....

(3) Any father of such child who fails to file and register his notice of claim to paternity and to assume responsibility for the child shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child. Failure of such filing or registration shall constitute an abandonment of said child and shall be prima facie evidence of sufficient grounds to support termination of such father's parental rights in accordance with section 16–2005, Idaho Code.

Lori asserts that this statute mandates the filing of a notice of claim to paternity brought pursuant to I.C. § 7–1101 *et seq.*, and that failure to file such notice bars the putative father from thereafter bringing a paternity claim. Lori argues that since there is no common law action for paternity in Idaho, the reference to paternity actions in I.C. § 16–1513(3) can only refer to paternity actions brought pursuant to I.C. § 7–1101. Roger, on the other hand, contends that the requirements of I.C. § 16–1513(3) are only applicable in the context of an adoption or termination proceeding, and not to a direct action to establish paternity under I.C. § 7–1101. Sitting in its appellate capacity, the district court agreed with Roger and found that "I.C. §§ 7–1101 *et seq.* and 16–1513 are mutually exclusive and the provisions of I.C. § 16–1513 do not apply to paternity actions brought pursuant to 7–1101...." We affirm the district court.

This Court's primary function in construing a statute is to ascertain the legislative intent and give effect thereto. *Idaho Public Util. Comm'n v. V–1 Oil Co.*, 90 Idaho 415, 412 P.2d 581 (1966). When the meaning of a statute is unclear, resort may be had to the legislative titles and statutory headings to aid in ascertaining legislative intent. *Walker v. Nationwide Fin. Corp. of Idaho*, 102 Idaho 266, 629 P.2d 662 (1981). Our jurisprudence is replete with examples in which even the most lucid pronouncements of the legislature become dim when extracted from the context in which they were given. Hence we have the well settled rule that all sections of the applicable statutes should be considered and construed together to determine the intention of the legislature. *Janss Corp. v. Board of Equalization of Blaine County*, 93 Idaho 928, 478 P.2d 878 (1970); *Keenan v. Price*, 68 Idaho 423, 195 P.2d 662 (1949).

I.C. § 16–1513, entitled "Claim of Paternity," appears within a larger statutory framework, chapter 15 of Title 16, entitled "Adoption of Children." This title furnishes some basis for the conclusion that the notice of claim of paternity referred to in I.C. § 16–1513 shares some connection with adoption proceedings. I.C. § 16–1513(4) states that the Department of Health and Welfare, Division of Social Services, private adoption agencies or attorneys involved in adoptions "shall notify all putative fathers by personal service of their need to register their intent to support and exercise their rights and responsibilities toward the child born out-of-wedlock...." The statute establishes a procedure for notifying the putative father of an illegitimate child that he must file a notice if he intends to make any claim to the child in an adoption or termination proceeding. Under I.C. § 16–1513(5), if personal service cannot be obtained then service by publication, notifying the father of the requirement to register his claim of paternity, shall be given by registered or certified mail. Thereafter, if the putative father does not file and register his notice of claim as provided for in subsection (1) he "shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child." I.C. § 16–1513(3).

Examination of the interplay between these subparts of I.C. § 16–1513 displays a mechanism for dealing with paternity claims that emerge in the context of an adoption or termination proceeding. The collective import of these provisions is evident. We conclude that I.C. § 16–1513(3) was never intended to prevent a father from voluntarily coming forward and, in the absence of an adoption or termination

proceeding, filing an action under I.C. § 7–1101 *et seq.* to establish his rights and obligations with regard to the child without first having filed and registered the notice of claim to paternity required by I.C. § 16–1513(3).

Affirmed. Costs (excluding attorney fees) to respondent Burch.

BISTLINE, JOHNSON and McDEVITT, JJ., and WOODLAND, J. pro tem., concur.

BISTLINE, Justice, specially concurring.

Having concurred fully in the opinion authored by Chief Justice Bakes, I write only to add that Subsection 1 of I.C. § 16–1513 [1] is a clear indication of legislative belief and acceptance that there is inherently a father's right to seek a judicial determination that he is indeed the father of a given child, which in my view is prefer- able to going through the registration procedure. Such registration procedure establishes nothing more than a mere claim to parenthood, similar to "claiming" a water right and accordingly thereafter filing the necessary application for a permit, obtaining a patent or license and, where necessary, quieting title thereto.

It is not beyond comprehension that a purported or would-be father who merely registers his claim to paternity with the department of health and welfare might very well be confronted with the claim of another would-be father.

---

[1]. Idaho Code § 16–1513(1) states in part:
**Claim of paternity.**—(1) A person who is the father or claims to be the father of a child born out-of-wedlock may claim rights pertaining to his paternity of the child by registering with the vital statistics unit of the department of health and welfare, a notice of his claim of paternity to the child born out-of-wedlock and his willingness and intent to support the child to the best of his ability.... When making a claim of paternity, a person who is the father or claims to be the father of a child born out-of-wedlock, shall mail to the vital statistics unit of the department of health and welfare, the completed form prescribed by the vital statistics unit of the department of health and welfare. Said form will be filled out completely, signed by the person claiming paternity, and witnessed before a notary public.